IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMARA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-CV-04196 |
| | ) | |
| CITY OF NAPERVILLE, JUAN LEON, | ) | Judge John J. Tharp, Jr. |
| and JONATHAN W. POPE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The defendants' motion to dismiss [16] is granted, for the reasons explained in the following Statement. The plaintiff is granted leave to amend her complaint by June 30, 2026. Absent timely amendment, this case will be terminated and Final Judgment will be entered in favor of the defendants.

## STATEMENT

### I.    Background

The plaintiff, Amara Harris, attended Naperville North High School, where defendants Juan Leon and Jonathan W. Pope are school resource officers. Both are employed by the Naperville Police Department. Am. Compl. 2–3 ¶¶ 6–7, ECF No. 12. On December 4, 2019, Officer Leon issued Harris a ticket for theft. *Id.* at 3 ¶ 12. The City of Naperville continued to prosecute that alleged violation for three years, culminating in a jury finding that Harris was not guilty of theft. *Id.* at 4 ¶ 19. Due to the prosecution, Harris says, she suffered financial, reputational, and emotional harm, and had to delay her matriculation at Spelman College. *Id.* at 4 ¶ 18.

Harris says that the ticket's issuance "was racially discriminatory and lacked a legitimate purpose." *Id.* at 5 ¶ 26.[1] The complaint alleges that Sergeant Pope, the school resource officer supervisor, did not train his subordinates in "constitutional policing," which led to a "custom of illegal ticketing of students." *Id.* at 4 ¶ 20. Harris further contends that Black students at Naperville North were disproportionately targeted and issued tickets; Black students received 26% of tickets issued between 2019–2021, but only constituted 4% of the student body. *Id.* at 3 ¶ 8, 4 ¶ 20.[2] In

---

[1] Harris also alleges that Leon later testified that he issued the ticket because "he was angry that Amara Harris's mother would not meet with him so that he could issue a station adjustment." *Id.* at 4 ¶ 16.

[2] As the defendants note, Harris did not plead her own race. Harris's response clarifies that she is Black. Resp. 3, ECF No. 19.

contrast, white students received 62% of the tickets and constituted 59% of the population. *Id.* at 3 ¶ 9.

Harris brought this action against Pope, Leon, and the City of Naperville, alleging violations of the Equal Protection Clause, deliberate indifference, abuse of process, and intentional infliction of emotional distress. The defendants moved to dismiss the complaint.

## II. Discussion

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the pleaded facts as true and draws all reasonable inferences in Allen's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

Each theory is called a "count" in the complaint. "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence"—*see* Rule 10(b), but are often improperly employed to assert different legal theories in support of a claim. As the late Judge Shadur explained, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.' That is not what Rule 10(b)'s last sentence defines as the proper role for any such separation of a pleading into different counts." *Bonestroo, Rosene, Anderlik & Assocs., Inc. v. Devery*, No. 05-cv-02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citation removed). Because each "count" in the plaintiff's complaint relies on the same factual allegations, the "counts" are simply different theories of relief on that claim.

The Amended Complaint sets forth a number of constitutional theories of relief, each of which is dependent on Harris successfully pleading that she suffered a constitutional injury. Because the complaint fails to do so, each of her constitutional theories fails, as discussed below.

### a. Equal Protection

Harris alleges that Pope and Leon "used the ticketing of Amara Harris to initiate the legal process against Amara Harris with the ulterior motive of enforcing a racially discriminatory policy." Am. Compl. 5 ¶ 28. Defendants interpret this as a selective prosecution or selective enforcement theory, which Harris does not dispute.[3] *See* Mem. Mot. Dismiss 3, ECF No. 17.

---

[3] The complaint also alleges that Leon issued the ticket "without a legitimate factual basis," which evokes a Fourth Amendment theory. Am. Compl. 3 ¶ 12. Harris's response to the motion to dismiss, however, doubles down on the Equal Protection theory and does not make any argument that a Fourth Amendment theory is viable. In any event, the allegations regarding probable cause (or the lack thereof) are conclusory and therefore not entitled to the presumption of truth on a motion to dismiss. What is more, Harris did not allege that Leon conducted either a search or seizure, so she did not state a Fourth Amendment claim. *Washington v. City of Chicago*, 98 F.4th 860, 868 (7th Cir. 2024) ("To prove a Fourth Amendment violation, a plaintiff must show first that a seizure occurred, and then, if so, that the seizure was unreasonable.").

"Racially selective law enforcement is a quintessential equal protection violation." *Conley v. United States*, 5 F.4th 781, 788 (7th Cir. 2021). To succeed on either a selective prosecution or enforcement theory, a plaintiff must show "that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001)). Discriminatory purpose requires "that the decisionmaker [in the plaintiff's case] . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 789 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)).

To support a theory of selective enforcement or prosecution, Harris's complaint must contain sufficient factual allegations to plausibly suggest that similarly situated white individuals were not ticketed (discriminatory effect) and that Leon ticketed Harris because of her race (discriminatory purpose). *Williams v. City of Aurora*, No. 20-CV-2549, 2024 WL 1195515, at *11 (N.D. Ill. Mar. 20, 2024). Harris's only allegations relevant to discriminatory effect are the statistics regarding the rates at which students were ticketed at Naperville North. Defendants argue that Harris therefore fails to allege that she was similarly situated to, or treated differently from, any other ticketed students who were not Black. Mem. Mot. Dismiss 4. Statistics are not necessarily insufficient to plead discriminatory effect, but they "must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Chavez*, 251 F.3d at 638. The statistics Harris provides do not provide information about what different students were ticketed for, much less that students of different races were similarly situated and yet treated differently. The amended complaint therefore fails to adequately plead discriminatory effect. *See United States v. Armstrong*, 517 U.S. 456, 470 (1996) ("The study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted."). Harris's complaint therefore does not state a claim under an Equal Protection theory.

### b. *Monell*

Harris's next constitutional theory is against the City of Naperville for having "a policy or custom of issuing tickets to students, particularly Black students and other racial minorities, in a manner that was discriminatory and violated their constitutional rights." Am. Compl. 6 ¶ 36. Cities like Naperville can be held liable for constitutional violations under the Supreme Court's decision in *Monell v. Department of Social Services*. 436 U.S. 658 (1978). But the first element of a *Monell* suit requires the plaintiff to show that her constitutional rights were violated. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Because the plaintiff has not done so, as discussed above, her *Monell* theory also fails.

### c. Liability for Hiring and Training

The Amended Complaint contains a "count" against Pope and the City of Naperville styled as "Negligent Hiring, Training, Supervision and Retention" under Section 1983. Under § 1983, a plaintiff *might* be able to hold a municipality liable for improper hiring upon "a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 412 (1997); *id.* (noting that the Court was "assuming without deciding that proof of a single instance of inadequate screening could ever trigger

municipal liability"). As for Pope, the Supreme Court has held that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Even assuming that an improper hiring claim could be sustained against an individual officer rather than a municipality (and Harris provides no reason to think so), that theory of liability also requires the plaintiff to have suffered a constitutional injury. *Brown*, 520 U.S. at 412. The same goes for an inadequate training theory. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 381 (7th Cir. 2020) ("[L]iability based on a failure to act, at its core, follows from a showing of constitutional violations caused by a municipality's deliberate indifference to the risk of such violations."). Because the complaint does not plead facts sufficient to make the plausible inference that Harris suffered any constitutional injury, a theory of liability based on hiring or training fails as well.

\* \* \*

Because Harris does not state a claim under any of her federal law theories, this Court declines to exercise supplemental jurisdiction over her state law theories. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). Harris may, however, amend her complaint by June 30, 2026.

_____

John J. Tharp, Jr.
United States District Judge

Date: June 1, 2026